## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **KYLE NICHOLAS GADKE,** individually and on behalf of all others similarly situated, | Case No. |
| | **CLASS ACTION** |
| *Plaintiff*, | **DEMAND FOR JURY TRIAL** |
| *v.* | |
| **NEW YORK TRIBECA GROUP LLC**, a New York limited liability company, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kyle Nicholas Gadke ("Plaintiff" or "Gadke") brings this Class Action Complaint and Demand for Jury Trial against Defendant New York Tribeca Group LLC, doing business as Tribeca Group ("Defendant" or "Tribeca Group") to stop the Defendant from violating the Florida Telephone Solicitation Act ("FTSA") by directing the making of telemarketing calls *without consent* to Florida consumers, including those who registered their phone numbers on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all

other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.    Plaintiff Kyle Nicholas Gadke is a resident of Miami, Florida.

2.    Defendant New York Tribeca Group LLC is a New York limited liability company with its principal place of business in New York City, New York. Defendant Tribeca Group conducts business throughout this District, New York, and the U.S.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. 1332(d)(2).  The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the FTSA.  Further, Plaintiff alleges a Florida class, which will result in at least one Class member from outside Kentucky.

4.    This Court has personal jurisdiction over the Defendant because the Defendant has its headquarters in this District and conducts business in and from this District.

5.    The venue is proper under 28 U.S.C. § 1391(b) because the Defendant

resides in this District calls at issue were made into from this District.

## COMMON ALLEGATIONS

6.     Defendant New York Tribeca Group is a New York limited liability company which provides financing solutions to existing businesses throughout the U.S. [1]

7.     Defendant Tribeca Group uses automated systems to send outbound telephonic sales calls, including text messages, to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the "no solicitation list", soliciting consumers to use Defendant's financial services.

8.     Defendant Tribeca Group made telephonic sales calls or caused telephonic sales calls to be made using spoofed phone numbers which were not capable of receiving calls or connecting the original call recipient to the Defendant, on whose behalf those telephonic sales calls were placed.

9.     Other consumers have posted complaints online about receiving unsolicited telephonic sales calls and text messages from Defendant Tribeca Group, for instance:

- "Cold texted me despite ZERO prior contact with them and no interest in their services. There is no excuse for this kind of predatory practice. Shows they are willing to buy irrelevant, cheap leads with no vetting and no care for how disruptive or unwanted their intrusions are. Tells me I would never

_____

[1] https://www.nytribecagroup.com/loan-types/

want to do business with them even if I did want to borrow capital for my business."[2]

- "Absolutely a scam, they harrass you non stop and try and loan shark new business owners...run!"[3]

- "Why would a 'legitimate' company feel the need to use phone-number-spoofing technology for its outbound calls? This is the same method used by overseas scammers, and is intended to prevent easy reverse-searching. I am highly skeptical of this company and recommend anyone proceed with due caution."[4]

- "if I wanted to do business with a loan shark id stay local and just get it from ronnie giallanzo not some scammer overseas calling me from a call center"[5]

- "These are aggressive loan sharks that will not take no for an answer. I never asked them to contact me and they will not stop. I'm going to report them to the FTC"[6]

- "They make solicitations and when you decline or ask questions they can't answer about cost, they hang up. Repeat experiences."[7]

- "These guys are the worst! I keep asking them to remove me from their call, text and email listing. It's non-stop harassment from these people! I don't want your high interest rate money! Calls all day and night along with text from Phil, Peter, Brandon, and Colin! Next will be reporting you guys for harassment!"[8]

- "I have received so many unsolicited calls from this company I've lost count. Please stop. Also, something is quite odd with the 5 star reviews here. I encourage everyone to search the names used for those reviews.

---

[2] https://www.google.com/search?q=%22tribeca+group%22+%22sophia
[3] *Id.*
[4] https://www.google.com/search?q=%22tribeca+group%22+%22sophia
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*

The 1 star reviews are easily verifiable as real business owners. Also, to "New York Tribeca Group"... take a look at Section 399-PP and Section 399-Z of New York State's General Business Law, restricting unsolicited telemarketing calls to a state/city in a state of emergency."[9]

- "I was cold called about getting a loan, which I didn't need. Now I get daily emails asking to set up an appointment to go over things. After multiple emails to ask them to stop and phone calls telling them to stop reaching out to me, it won't stop. Even on the phone calls when I ask them to stop emailing me, they still try to sell. A pest of a company!"[10]

- "There is a guy at this company named ****************** that emails me every single day and minimum of once a day. I also receive hundreds of phone calls a month from this company. I have told the guy to F off many times I have told the guy to stop calling me many times I have emailed the guy to stop calling and e mailing me many times. There is no option to opt out of anything The harassment never ends. I have filed a cease and desist and my next step is to call the **** and file a police report. This is not a business this is some sort of fraud scam spam lie ********. I am not a customer, I have never replied with them, they are simply a house of fraudulent harassing scammer spammers. I do not want an apology I want them to go to jail."[11]

- "This company unlawfully acquires people's contact information and spams them. They call from fake numbers, ignore do not call requests, don't provide unsubscribe options on their emails and have been HARASSING me for months."[12]

- "Please make these people stop calling my firm. I have told them to stop no less than 15 times. Thank you"[13]

---

[9] *Id.*
[10] *Id.*
[11] https://www.bbb.org/us/ny/new-york/profile/financing-consultants/new-york-tribeca-group-llc-0121-169222/complaints
[12] *Id.*
[13] *Id.*

5

- "They call text and email me everyday, won't leave me alone after I have told them not to contact me anymore."[14]

 Eric H

⭐☆☆☆☆                                                                04/29/2019

The Tribeca Group (New York, NY) is calling and texting me several times a day and has been for the last two months or so. "Phillip" is asking for "Sergio" allegedly hoping to sell "Sergio" a small business loan. There is no Sergio at this phone number and there never has been. They are also asking for my bank records, which I have not provided. I have NEVER made contact with Tribeca group other than telling them I am not interested in their product, I am not "Sergio", and they should remove me from their call list and contacts list. I don't know if Tribeca is running a scam or has robo calls and texts running wild. Your help in disassociating me from Tribeca Group will be greatly appreciated. My star rating for Tribeca is zero.

 Nicholas P

⭐☆☆☆☆                                                                03/27/2019

They call text and email me everyday, won't leave me alone after I have told them not to contact me anymore.

-                                                                                                15

 **Thomas J Utz Orler** 💬 doesn't recommend **New York Tribeca Group**.
8 October 2021 · 🌐

THEY HARRASS YOUR BUSINESS ALL THE TIME,  RELENTLESS E MAILS AND PHONE CALLS... REQUESTS TO STOP NOVER DONE..  FOR YEARS THEY BEEN DOING THIS OVER AND OVER AGAIN... MAKE THEM STOP

-                                                                                                16

 **JJ Brown** 💬 doesn't recommend **New York Tribeca Group**.
9 June 2020 · 🌐                                                                          ···

They will cold call you at 7am every single day. They will fake/mask thier phone number, they will ignore requests to be removed. They will hang up when you call to complain.

Why would anyone trust a company that acts like this?

6 months+ of daily harassment from them so far. Everyone should be aware of what these people really do.

-                                                                                                17

-  

---

[14] https://www.bbb.org/us/ny/new-york/profile/financing-consultants/new-york-tribeca-group-llc-0121-169222/customer-reviews
[15] *Id.*
[16] https://www.facebook.com/NewYorkTribecaGroup/reviews/?ref=page_internal
[17] *Id.*



- Elijah Charalampopoulos ☑ doesn't recommend **New York Tribeca Group**.
  21 February 2020 · ◌

  Unsolicited calls and text messages. Pretty sure all the positive comments are from people who work there.                                                                18

- Yoosof Fazal ☑ doesn't recommend **New York Tribeca Group**.
  12 May 2019 · ◌

- stop calling me! stop emailing me!                                                                                      19

10.    Defendant Tribeca Groups also hires employees to place outbound telephonic sales calls and text messages to consumer leads provided to them by the Defendant. For instance, Defendant posted online to hire for the role of Entry Level Sales Rep to place outbound telemarketing calls and text messages to solicit business: [20]

We supply you with HIGH-QUALITY LEADS - you do not need to generate leads yourself.

Our leads are scrubbed and vetted before they hit your desk. The closing rate is over 50%.

We offer all the training you need to succeed, but candidates with a background in Sales are encouraged to apply.

**We Offer**
- Warm leads distributed via CRM & Dialer
- Training
- Exciting sales environment with a collaborative culture
- Top sales professionals to mentor and guide your growth in the industry
- Access to products and platforms to generate cross sales and increase revenues
- Aggressive commission + bonus, along with monthly incentives. Paid weekly

**Requirements**
- Excellent communication skills
- Proficient in English
- Comfortable on the phone with heavy call volume

---

[18] *Id.*
[19] *Id.*
[20] https://www.linkedin.com/jobs/view/2987400867/

11.     Multiple employees of Defendant Tribeca Group have posted reviews online about Defendant's cold calling practices, stating that Defendant provided consumer leads to them for cold calling:

- Account Executive (Former Employee) - Wall Street, NY - June 11, 2020

   I am a former employee of the company. They have great people working there, the floor has a ton of energy and you actually learn what you need to do for the position unlike some other companies I've worked for in the past. They give you leads so you don't have to generate your own and actually care about their employees. Unfortunately I had to leave because of a medical issue but I highly recommend this company if you're a broker in the MCA industry. They give you the opportunity to make a lot of money, you just need to put the work in. [21]

- **Fast-paced, productive work environment with opportunity for growth**

   Chief Marketing Officer / Web Developer (Current Employee) - New York, NY - July 9, 2018

   Excellent work atmosphere for for any individual with high aspirations. An opportunity for growth in the field. I enjoy being able to constantly improve this company's daily operations and strengthening its industry presence. I enjoy the relaxed work environment, which is stress-free and productive. Respect goes a long way at NYTG, and I love it. I am happy to be the initiator of the open-door policy in the office. I am also happy to have started inbound lead generation services for the company. [22]

12.     In response to these calls, Plaintiff Gadke brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the Florida Telephone Solicitation Act, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF GADKE'S ALLEGATIONS

---

[21] https://www.indeed.com/cmp/New-York-Tribeca-Group/reviews
[22] *Id.*

13.     Plaintiff Gadke is the subscriber and the sole user of the cell phone number ending with xxx-xxx-5264.

14.     Plaintiff Gadke registered his cell phone number on the National Do Not Call Registry on January 6, 2022.

15.     In January 2022, Plaintiff Gadke started receiving telephonic solicitation text messages from Defendant Tribeca Group using spoofed phone numbers offering him financing solutions for his business, using automated systems designed to identify and respond to certain keywords like, STOP.

16.     On January 26, 2022, at 8:53 AM, and at 12:56 PM, Plaintiff received telephonic sales text messages to his cell phone from the phone number 908-503-6632 from Defendant Tribeca Group. The text messages were seeking information to offer advance options to the Plaintiff.



17.     The phone number from which Defendant sent the telephonic sales text messages to the Plaintiff's cell phone, 908-503-6632, is not capable of receiving calls and the Plaintiff was unable to reach the Defendant on calling this phone number back.

18.     Plaintiff continued to receive solicitation text messages from the Defendant even after 31 days of registering his cell phone number on the National Do Not Call Registry.

19.     On February 10, 2022, at 4:12 PM, Plaintiff received the same telephonic sales text message to his cell phone from the phone number 833-755-6412 from Defendant Tribeca Group as before. The text message was seeking information to offer advance options to the Plaintiff.



20.     The phone number from which Defendant sent the above telephonic sales text message to the Plaintiff's cell phone, 833-755-6412, is not capable of receiving calls and the Plaintiff was unable to reach the Defendant on calling this phone number back.

21.     The unauthorized telephonic sales text messages that Plaintiff received from and/or on behalf Defendant, as alleged herein, have harmed the Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

22.     Seeking redress for these injuries, Plaintiff Gadke, on behalf of himself and Classes of similarly situated individuals, bring suit under the FTSA.

## CLASS ALLEGATIONS

23.     Plaintiff Gadke brings this action pursuant to Florida Rule of Civil Procedure 1.220(b)(2) and (b)(3), and seek certification of the following Classes:

**Autodial Class:** All persons in Florida, who, on or after July 1, 2021, (1) received a telephonic sales call regarding Defendant's goods and/or services, (2) using the same equipment or type of equipment utilized to call the Plaintiff.

**DNC Class:** All persons in Florida, (1) whose telephone numbers appear on the then-current "no sales solicitation calls" list, and (2) who received unwanted telephonic sales call from or on behalf of the Defendant.

**Spoofed Phone Number Class:** All persons in Florida, who (1) received a telephonic sales call from or on behalf of the Defendant, (2) using a phone number which the recipients of the call were unable to call back, or (3) on calling those number back, the recipients were unable to reach the Defendant or their agents, as in the Plaintiff's case.

24.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current

or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff Gadke anticipates the need to amend the Class definition following appropriate discovery.

25.    **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

26.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Classes include, but are not necessarily limited to the following:

    (a)    Whether Defendant's conduct violated the FTSA; and

    (b)    whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

27.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. The Plaintiff has no interests antagonistic to those

of the Classes, and Defendant have no defenses unique to the Plaintiff. The Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither the Plaintiff nor his counsel have any interest adverse to the Classes.

28.     **Appropriateness**: This class action is also appropriate for certification because the Defendant have acted or refused to act on grounds generally applicable to the Classes and as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Gadke. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

<u>**FIRST CLAIM FOR RELIEF**</u>
**Violation of the Florida Telephone Solicitation Act,**
**(Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff Gadke and the Autodial Class)**

29.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

30.     Plaintiff brings this claim individually and on behalf of the Autodial Class Members against the Defendant.

31.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

32.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

33.     Defendant failed to secure prior express written consent from Plaintiff and members of the Autodial Class.

34.     In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Autodial Class members without Plaintiff's and the Class members' prior express written consent.

14

35.     Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

36.     As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

**SECOND CLAIM FOR RELIEF**
**Violation of the Florida Telephone Solicitation Act,**
**(Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff Gadke and the DNC Class)**

37.     Plaintiff repeats and realleges paragraphs 1 through 28 of this Complaint and incorporates them by reference herein.

38.     Plaintiff brings this claim individually and on behalf of the DNC Class Members against the Defendant.

39.     It is a violation of the FTSA to "make or cause to be made any unsolicited telephonic sales call to any residential, mobile, or telephonic paging device telephone number if the number for that telephone appears in the then-current quarterly listing published by the department." Fla. Stat. § 501.059(4)

40.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or

services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

41.     In violation of the FTSA, Defendant made and/or cased to be made unsolicited telephone sales calls to Plaintiff, and other members of the DNC Class despite their telephone numbers appearing on the quarterly listing published by the department.

42.     As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

**THIRD CLAIM FOR RELIEF**
**Violation of the Florida Telephone Solicitation Act,**
**(Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff Gadke and the Spoofed Phone Number Class)**

43.     Plaintiff repeats and realleges paragraphs 1 through 28 of this Complaint and incorporates them by reference herein.

44.     Plaintiff brings this claim individually and on behalf of the Spoofed Phone Number Class Members against Defendant.

45.     It is a violation of the FTSA "for any person who makes a telephonic sales call or causes a telephonic sales call to be made to fail to transmit or cause not to be transmitted the originating telephone number and, when made available by the

telephone solicitor's carrier, the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call. However, it is not a violation to substitute, for the name and telephone number used in or billed for making the call, the name of the seller on behalf of which a telephonic sales call is placed and the seller's customer service telephone number, which is answered during regular business hours. If a telephone number is made available through a caller identification service as a result of a telephonic sales call, the solicitor must ensure that telephone number is capable of receiving telephone calls and must connect the original call recipient, upon calling such number, to the telephone solicitor or to the seller on behalf of which a telephonic sales call was placed. For purposes of this section, the term "caller identification service" means a service that allows a telephone subscriber to have the telephone number and, where available, the name of the calling party transmitted contemporaneously with the telephone call and displayed on a device in or connected to the subscriber's telephone." Fla. Stat. § 501.059(8)(b).

46.    A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes."

Fla. Stat. § 501.059(1)(i).

47.     Defendant failed to ensure that the phone number which was displayed in the caller identification service for the telephonic sales call made by them to the Plaintiff was capable of receiving phone calls if the Plaintiff tried to call it back. The Plaintiff was unable to connect with the Defendant upon calling the phone number which was displayed on their cell phone's caller identification system for the telephonic sales call received from the Defendant.

48.     In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members using spoofed phone numbers or phone numbers which could not be called back by the Plaintiff or the other Class members.

49.     As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the members of the Classes are also entitled to an injunction against future calls. *Id*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a)   An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b)   An award of damages and costs;

c)   An order declaring that Defendant's actions, as set out above, violate the FTSA;

d)   An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e)   Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Gadke requests a jury trial.

**KYLE NICHOLAS GADKE**, individually and on behalf of all others similarly situated,

DATED this 12th day of December, 2022.

By: /s/ Stefan Coleman
Stefan Coleman (FL Bar No. 30188)
law@stefancoleman.com
COLEMAN PLLC
11 Broadway, Suite 615
New York, NY 10001
Telephone: (877) 333-9427

Avi R. Kaufman (FL Bar No. 84382)

kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881


*Attorneys for Plaintiff and the putative
Classes*