# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

Kyle Nicholas Gadke, individually and )
on behalf of all others similarly situated, )
                                    )
           Plaintiff, )
                                    )
*v.* )      Case No.: 1:22-cv-07810-NRM-RER
                                    )
New York Tribeca Group, )
A New York limited liability company, )
                                    )
           Defendant. )

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT</u>

Jeffrey M. Rosin, Esq. #3026952
O'Hagan Meyer, PLLC
111 Huntington Avenue, Suite 719
Boston, MA 02199
Telephone:  (617) 843-6800
Facsimile:   (617) 843-6810
jrosin@ohaganmeyer.com

*Attorney for Defendant, New York Tribeca Group*

# TABLE OF CONTENTS

**Page**

I. Introduction ................................................................................................1

II. Statement of Facts ......................................................................................2

III. Legal Standard ...........................................................................................5

    A. Fed. R. Civ. P. 12(b)(6) ......................................................................5

    B. Fed. R. Civ. P. 12(b)(1) ......................................................................6

IV. Argument ...................................................................................................7

    A. Plaintiff Fails to Adequately Plead Jurisdiction Under CAFA ............7

    B. Plaintiff Lacks Standing to Assert Claims under the FTSA ................10

    C. The FTSA only Applies to Intrastate Communications........................15

    D. Plaintiff Fails to Plead use of Autodialer .............................................16

    E. Plaintiff Fails to State a Claim that Defendant Violated the DNC ........18

V. Conclusion ..................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

<u>CASES</u>

*Agile Safety Variable Fund, L.P. v. RBS Citizens, N.A.*,
  793 F. Supp. 2d 1248 (D. Co. 2011)................................................................. 5

*Alvarez v. Sunshine Life & Health Advisors, LLC*,
  2022 WL 2293449 (Cir. Ct. Fla. Apr. 11, 2022) .......................................... 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................ 6

*Aurecchione v. Schoolman Transp. System, Inc.*,
  426 F.3d 635 (2d Cir. 2005)............................................................................ 7

*Baranski v. NCO Financial Systems, Inc.*,
  2014 WL 1155304 (E.D.N.Y. Mar. 21, 2014)............................................... 17

*Barton v. LeadPoint, Inc.*,
  2022 WL 123352 (W.D. Wash. Jan. 13, 2022)................................................ 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 533 (2007)........................................................................................ 6

*Blockbuster, Inc. v. Galeno*,
  472 F.3d 53 (2d Cir. 2006)............................................................................... 7

*Café Pllaza de Mesilla Inc v. Continental Casualty Co.*,
  519 F. Supp. 3d 1006 (D.N.M. 2021)............................................................... 3

*Calta v. Vision Solar FL, LLC*,
  2022 WL 17730114 (M.D. Fla. Dec. 16, 2022)............................................... 8

*Chennette v. Porch.com, Inc.*,
  2020 WL 9078129 (D. Idaho Nov. 2, 2020).................................................. 20

*Corle v. Estate Planning and Preservation, Inc.*,
  2011 WL 2836374 (N.D. Ind. Jul. 14, 2011).................................................. 9

*Cornwell v. Credit Suisse Group*,
  666 F. Supp. 2d 381 (S.D.N.Y. 2009)............................................................. 7

*D.M. Rottermond Inc. v. Shiklanian*,
  2021 WL 3525102 (E.D. Mich. Jun. 2, 2021) ................................................. 3

**TABLE OF AUTHORITIES** *(Continued)*

**Page(s)**

*Davis v. Coast Dental Services, LLC*,
    2022 WL 4217141 (M.D. Fla. Sept. 13, 2022) ............................................................... 17

*de Moura Castro v. Loanpal, LLC*,
    2022 WL 2315697 (D. Conn. Jun. 28, 2022) ..................................................................... 3

*Edwards v. McCormick*,
    196 F.R.D. 487 (S.D. Ohio 2000) ...................................................................................... 5

*Eldridge v. Pet Supermarket, Inc.*,
    446 F. Supp. 3d 1063 (S.D. Fla. 2020) ............................................................................ 14

*Erickson v. Elliot Bay Adjustment Company, Inc.*,
    2017 WL 1179435 (W.D. Wash. Mar. 29, 2017) ............................................................. 5

*Florida Evergreen Foliage v. E.I Dupont De Nemours and Co.*,
    336 F. Supp. 2d 1239 (S.D. Fla. 2004) ............................................................................. 3

*Fontanez v. Wolverine World Wide, Inc.*,
    2022 WL 17959844 (M.D. Fla. Dec. 27, 2022) .............................................................. 15

*Frater v. Lend Smart Mortgage, LLC*,
    2022 WL 4483753 (S.D. Fla. Sept. 27, 2022) ..................................................... 11, 13, 14

*Gerritsen v. Warner Bros. Entertainment, Inc.*,
    112 F. Supp. 3d 1011 (C.D. Cal. 2015) .......................................................................... 18

*GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc.*,
    449 F.3d 377 (2d Cir. 2006) ...................................................................................... 11, 12

*Gulden v. National Security Exchange, LLC*,
    2019 WL 13196395 (D. Ariz. May 23, 2019) ................................................................ 18

*Henry v. Warner Music Group Corp.*,
    2014 WL 1224575 (S.D.N.Y. Mar. 24, 2014) .................................................................. 8

*JCG v. Ercole*,
    2014 WL 1630815 (S.D.N.Y. Apr. 24, 2014) .................................................................. 6

*Kim v. Trulia*,
    2021 WL 8743946 (E.D.N.Y. Mar. 31, 2021) ................................................................. 9

*Kinsey v. New York Times Company*,
    991. F.3d 171 (2d Cir. 2021) ............................................................................... 1, 10, 11

**TABLE OF AUTHORITIES** *(Continued)*

**Page(s)**

*Knapp v. Zoetis*,
   2021 WL 1225970 (E.D. Va. Mar. 31, 2021) ................................................ 10

*Kosieradski v. Eversource Service Energy Company*,
   2021 WL 1227571 (D. Conn Apr. 1, 2021) .................................................... 9

*Krakauer v. Dish Network, L.L.C.*,
   2015 WL 5227693 (M.D.N.C. Sept. 8, 2015) ................................................. 18

*Landsman & Funk, P.C. v. Skinder-Strauss Associates*,
   2009 WL 2857928 (D.N.J. Aug. 28, 2009) .................................................... 12

*Licensed Practical Nurses, Technicians and Health Care Workers of New York, Inc. v.
   Ulysses Cruises, Inc.*,
   131 F. Supp. 2d 393 (S.D.N.Y. 2000) ............................................................ 5

*Littlejohn v. City of New York*,
   795 F.3d 297 (2d Cir. 2015) .......................................................................... 6

*Makarova v. U.S.*,
   201 F.3d 110 (2d Cir. 2000) .......................................................................... 6

*Malik v. Meissner*,
   82 F.3d 560 (2d Cir. 1996) ............................................................................ 7

*Martinolich v. Golden Leaf Mgmt., Inc.*,
   786 So. 2d 613 (Fla. Dist. Ct. App. 2001) .................................................... 17

*MCFS & BB, Inc. v. Hartford Insurance Company of the Southeast*,
   2021 WL 981600 (M.D. Fla. Mar. 16, 2021) .................................................. 9

*Melito v. Experian Marketing Solutions, Inc.*,
   923 F.3d 85 (2d Cir. 2019) ............................................................................ 11

*Mendez v. Global Institute of Stem Cell Therapy and Research, USA*,
   2022 WL 3019858 (S.D. Cal. Jul. 29, 2022) ............................................... 8, 9

*Metropolitan, S.A. v. DGM Commodities Corp.*,
   2013 WL 5502818 (E.D.N.Y. Oct. 2, 2013) .................................................... 7

*Mittenthal v. Florida Panthers Hockey Club, Ltd.*,
   472 F. Supp. 3d 1211 (S.D. Fla. 2020) .......................................................... 14

*Muccio v. Global Motivation, Inc.*,
   --- F. Supp. 3d ----, 2022 WL 17969922 (S.D. Fla. Dec. 27, 2022) ......................... 12, 14

## TABLE OF AUTHORITIES *(Continued)*

**Page(s)**

*National Grange of the Order of Patrons of Husbandry v. California State Grange*,
    182 F. Supp. 3d 1065 (E.D. Cal. 2016)................................................................. 2

*Neuer v. Dental Resource Systems, Inc.*,
    2015 WL 4634044 (D. Kan. Jul. 27, 2015) ...................................................... 12

*Owen Equipment & Erection Co. v. Kroger*,
    437 U.S. 365 (1978).......................................................................................... 6

*Pacific Life Insurance Company v. Bank of New York Mellon*,
    2022 WL 1446552 (S.D.N.Y. Feb. 22, 2022)................................................. 10

*Pariseau v. Built USA, LLC*,
    --- F. Supp. 3d ----, 2022 WL 3139243 (M.D. Fla. Aug. 5, 2022) .................. 4

*Penrod v. K&N Engineering, Inc.*,
    2019 WL 1958652 (D. Minn. May 2, 2019)..................................................... 10

*Perez v. Golden Trust Insurance, Inc.*,
    470 F. Supp. 3d 1327 (S.D. Fla. 2020) ........................................................... 15

*Salcedo v. Hanna*,
    936 F.3d 1162 (11th Cir. 2019) ...................................................................... 13

*Shelton v. Target Advance LLC,|*
    2019 WL 1641353 (E.D. Pa. Apr. 16, 2019) .................................................. 19

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (U.S. 2016)................................................................................. 13

*Starke v. United Parcel Service, Inc.*,
    2011 WL 13294965 (E.D.N.Y. Jan. 13, 2011) ................................................. 9

*Sutta v. Hyundai Motor Am.*,
    2013 WL 12155722 (C.D. Cal. Jan. 16, 2013) ............................................... 10

*Trichell v. Midland Credit Mgmt, Inc.*,
    964 F.3d 990 (11th Cir. 2020) ........................................................................ 12

*TSA Stores, Inc. v. Department of Agriculture & Consumer Services*,
    957 So. 2d 25 (4th DCA 2007)........................................................................ 19

*Weber v. U.S. Sterling Securities, Inc.*,
    282 Conn. 722 (2007) ...................................................................................... 12

**TABLE OF AUTHORITIES** *(Continued)*

**Page(s)**

*Weitz v. Genting New World LLC*,
2023 WL 2328365 (S.D. Fla. Mar. 2, 2023) ........................................................ 14

*White v. Impact Funding Corp.*,
2011 WL 836947 (M.D. Fla. Feb. 15, 2011) ........................................................ 10

*Womack v. Cap. Stack, LLC*,
2019 WL 4142740 (S.D.N.Y. Aug. 30, 2019) ....................................................... 6

*Worsham v. Discount Power, Inc.*,
2021 WL 50922 (D. Md. Jan. 6, 2021) .................................................................. 19

*Zelma v. Williams*,
2011 WL 13298530 (M.D. Fla. Oct. 26, 2011) ..................................................... 12

<span style="text-decoration: underline">S</span>TATUTES

Fl St. § 501.059(8)(a) ................................................................................................ 16

<span style="text-decoration: underline">R</span>ULES

Fed. R. Civ. P. 8(a)(2) ............................................................................................... 6

<span style="text-decoration: underline">O</span>THER <span style="text-decoration: underline">A</span>UTHORITIES

Federal Trade Commission, *Federal Trade Commission Consumer Information*, available
at https://www.consumer.ftc.gov/articles/0108-national-do-not-call-registry (last
visited Jan. 4, 2021) .................................................................................................. 19

Federal Trade Commission, *Q&A for Telemarketers & Sellers About DNC Provisions in
TSR*, available at https://ftc.gov/tips-advice/business-center/guidance/qa-
telemarketers-sellers-about-dnc-provisions-tsr (last Jan. 4, 2021) .......................... 19

*Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Red.
9779, 9785 (June 17, 2008) ....................................................................................... 18

S.B. 2938, Senate Staff Analysis and Economic Impact Statement § III (Fla. May. 10,
1990) .......................................................................................................................... 16

S.B. 2938, Statement of Substantial Changes Contained in Committee Substitute for
Senate Bill 2938 (Fla.) .............................................................................................. 16

**TABLE OF AUTHORITIES** *(Continued)*

**Page(s)**

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendant, New York Tribeca Group ("Tribeca") hereby moves to dismiss Plaintiff's Complaint, and as grounds states as follows:

## I.  Introduction

The underlying matter arises out of Plaintiff's claims under Florida's Telephone Solicitation Act ("FTSA"). Plaintiff, who brings the claim on behalf of a putative class of Florida residents, alleges that Tribeca contacted him, without his consent, using spoofed numbers and automated systems, after he placed his number on the National Do Not Call Registry on January 6, 2022. As the following will demonstrate, Plaintiff's claims should be dismissed as a matter of law.

Plaintiff predicates jurisdiction in the underlying matter based upon the Class Action Fairness Act ("CAFA"). However, Plaintiff only conclusorily asserts that jurisdiction is appropriate under this statute, and fails to support his assertion with *any* tangible facts that would otherwise support jurisdiction in this regard. Absent such minimal supporting allegations, Plaintiff's effort to establish jurisdiction under CAFA should be denied, and the matter should dismissed as a matter of law.

Plaintiff also lacks standing to assert his claims, as the receipt of three text messages, standing alone, is insufficient to establish a concrete injury under Florida law when, as here, such allegations are only coupled with the bare assertion that such calls constitute an invasion of privacy or nuisance[1]. Furthermore, it is undisputed that the FTSA only governs <u>intrastate</u> communications, not interstate communications originating in New York as alleged in the underlying matter. Since

---

[1]   As discussed *infra*, jurisdiction is predicated upon CAFA. A court whose jurisdiction is predicated upon CAFA follows the choice of law of the forum state. Here, the District Court should apply Florida law since the calls were received in Florida, and the litigation concerns Florida residents seeking recovery under Florida statutes. *See, e.g.*, *Kinsey v. New York Times Company*, 991 F.3d 171, 176 (2d Cir. 2021) ("New York applies the law of the state with the most significant interest in the litigation.").

the FTSA does not apply to those interstate calls received by the Plaintiff, his claims should be dismissed as a matter of law.

Plaintiff also asserts a claim that Tribeca violated the FTSA by calling him using an automated system without his consent. To support such a claim, Plaintiff must allege some facts making it plausible that the defendant used an automated dialing system as described in the statute. Here, Plaintiff fails to include such allegations and his claim in this regard should be dismissed as a matter of law.

Finally, Plaintiff alleges that he placed his telephone number, ending in 5264, on the do-not-call registry on January 6, 2022, and that Tribeca's subsequent text messages to him after the number was placed on the registry violate the FTSA. Plaintiff alleges that he received two text messages from the Defendant on January 26, 2022. These messages cannot serve as the basis for a claim in this regard insofar as 30 days did not transpire between the date the number was placed on the registry and receipt of the calls in question. Furthermore, a cursory review of websites associated with Plaintiff's telephone number confirms that it is a business number of an entity of which Plaintiff is the owner. Since business numbers may not be included on the National Do-Not-Call Registry, Plaintiff's claim in this regard should be summarily dismissed as well.

## II.   Statement of Facts

Plaintiff is the subscriber and the sole user of the cell phone number ending with xxx-xxx-5264. (Plaintiff's Compl., ¶ 13). The full telephone number on which Plaintiff brings suit is (636) 866-5264 and is registered on www.Google.com and www.Zoominfo.com to the business Spirit FX, which identifies Plaintiff as the owner of the business.[2] (see website screenshot attached as

---

[2]   The Court may consider these documents without converting the motion to one for summary judgment. *National Grange of the Order of Patrons of Husbandry v. California State Grange*, 182 F. Supp. 3d

(Continued…)

Exhibit A and B). The website for Spirit FX similarly identifies Plaintiff as the owner of the Spirit FX.[3] (see website for Spirit FX attached as Exhibit C)[4]. Finally, Plaintiff maintains Facebook pages identifying himself as the owner of Spirit FX and listing the telephone number (636) 866-5264 as the number associated with the business Spirit FX. (see Facebook pages attached as Exhibit D)[5].

Plaintiff registered the above-referenced business cell phone number on the National Do Not Call Registry on January 6, 2022. (Plaintiff's Compl., ¶ 14). In January 2022, Plaintiff alleges he started receiving telephonic solicitation text messages from Defendant using spoofed numbers offering him financial solutions for his business, using automated systems designed to identify and respond to certain keywords like STOP[6]. *Id.* at ¶ 15. On January 26, 2022, at 8:53 AM, and at

---

1065, 1086, n. 3 (E.D. Cal. 2016) ("To the extent some of the descriptions about Google and Zoominfo's websites are not in the record, the court takes judicial notice of www.google.com and www.zoominfo.com and the information contained therein pursuant to Federal Rule of Evidence 201."); *de Moura Castro v. Loanpal, LLC*, 2022 WL 2315697, at *13 n. 2 (D. Conn. Jun. 28, 2022) ("The Court takes judicial notice that a 'Mark Murphy' appears as an employee on the 'zoominfo' website of defendant Prime Energy Solar, which is an Electricity, Oil & Gas Company with an estimated 32 employees…").

[3]   The Court may consider this document without converting the motion to one for summary judgment. *See, e.g.*, *Florida Evergreen Foliage v. E.I Dupont De Nemours and Co.*, 336 F. Supp. 2d 1239, 1306, n. 21 (S.D. Fla. 2004) (taking judicial notice of party website and stating that "I take judicial notice of the fact that Woolard was DuPont's employee or agent.")

[4]   Plaintiff uses his middle name for identification on this website.

[5]   The Court may consider these documents without converting the motion to one for summary judgment. *See, e.g.*, *D.M. Rottermond Inc. v. Shiklanian*, 2021 WL 3525102, at *8 n. 2 (E.D. Mich. Jun. 2, 2021) (taking judicial notice of Facebook page "[b]ecause the facts in question are the contents of a Facebook page, and can be verified by visiting said Facebook page, the fact 'is not subject to reasonable dispute' because the accuracy of the source 'cannot reasonably be questioned.'"); *Café Pllaza de Mesilla Inc v. Continental Casualty Co.*, 519 F. Supp. 3d 1006, 1017 n. 3 (D.N.M. 2021) (taking judicial notice of plaintiff's Facebook page).

[6]   Rather than respond "STOP", which would have ended the texts, Plaintiff indicated that he attempted to call the telephone number back. Had he simply responded "STOP", the calls would have ceased. Instead, Plaintiff allowed the text messages to proceed, thereby manufacturing a claim against the Defendant. *See, e.g.*, *Barton v. LeadPoint, Inc.*, 2022 WL 123352, at *2 (W.D. Wash. Jan. 13, 2022) ("They emphasize that had Barton replied 'Stop' to the first text he received, he would not have received the other calls, upon which his remaining TCPA claims against the remaining defendants rely. They assert, persuasively, that Barton did so to 'manufacture' a claim for statutory TCPA damages.");
(Continued…)

12:56 PM, Plaintiff also alleges he received telephonic sales text messages to his cell phone from the phone number 908-503-6632 from Defendant. The text messages were seeking information to offer advance options to the Plaintiff. (Plaintiff's Compl., ¶ 16). The phone number from which Defendant sent the telephonic sales text messages to the Plaintiff's cell phone, 908-503-6632, is not capable of receiving calls back and the Plaintiff was unable to reach the Defendant on calling this number back. *Id.*, at ¶ 17.

Plaintiff continued to receive solicitation text messages from the Defendant even after 31 days of registering his cell phone number on the National Do Not Call Registry. *Id.*, at ¶ 18. On February 10, 2022, at 4:12 PM, Plaintiff received the same telephonic sales text message to his cell phone from the number 833-755-6412 from Defendant as before. The text message was seeking information to offer advance options to Plaintiff. *Id.*, at ¶ 19. The phone number from which Defendant sent the above telephonic sales text message to Plaintiff's cell phone, 833-755-6412, is not capable of receiving calls and the Plaintiff was unable to reach the Defendant on calling this number back. *Id.*, at ¶ 20. The unauthorized telephonic sales text messages that Plaintiff received from and/or on behalf of the Defendant, have allegedly harmed the Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery), and the consumption of memory on the phone. *Id.*, at ¶ 22. Based upon the foregoing, Plaintiff seeks certification of the following classes:

---

*compare Pariseau v. Built USA, LLC*, --- F. Supp. 3d ----, 2022 WL 3139243, at *1 (M.D. Fla. Aug. 5, 2022) ("Pariseau quickly responded 'stop' to the unsolicited text, but Built USA failed to honor the request and continued sending Pariseau unsolicited text messages advertising a Built USA sweepstakes.")

**Autodial Class:** All persons in Florida, who, on or after July 1, 2021, (1) received a telephonic sales call regarding Defendant's goods and/or services (2) using the same equipment or type of equipment utilized to call the Plaintiff.

**DNC Class**[7]: All persons in Florida, (1) whose telephone numbers appear on the then-current "no solicitation calls" list and (2) who received unwanted telephonic sales call from or on behalf of the Defendant.

**Spoofed Phone Number Class:** All persons in Florida, who (1) received a telephonic sales call from or on behalf of the Defendant, (2) using a phone number which the recipients of the calls were unable to call back, or (3) on calling those number back, the recipients were unable to reach the Defendant or their agents, as in the Plaintiff's case.

*Id.*, at ¶ 23.

## III.    Legal Standard

### A.      Fed. R. Civ. P. 12(b)(6)

"In diversity cases, federal law governs procedural matters, which include the standards for motion to dismiss and summary judgment, while state law governs the substantive issues." *Agile Safety Variable Fund, L.P. v. RBS Citizens, N.A.*, 793 F. Supp. 2d 1248, 1253 (D. Co. 2011); *Licensed Practical Nurses, Technicians and Health Care Workers of New York, Inc. v. Ulysses Cruises, Inc.*, 131 F. Supp. 2d 393, 396 (S.D.N.Y. 2000) (In diversity cases…"generally speaking, matters of 'procedure' are determined by federal law while matters of 'substantive law are controlled by state law…"). "To survive a Rule 12(b)(6) motion, a plaintiff must plead facts in his

---

[7]   Plaintiff fails to adequately define the class insofar as there is no timeframe by which to measure which putative class members are part of the referenced class. "While class definitions are obviously individualized to the given case, important elements of defining a class including: specifying a particular group at a particular timeframe and location who were harmed in a particular way; and (2) defining a class such that a court can ascertain its membership in some objective manner." *Edwards v. McCormick*, 196 F.R.D. 487, 490-91 (S.D. Ohio 2000). Absent such allegations, Plaintiff's DNC Class and Spoofed Phone Number Class should be stricken as a matter of law. *Cf.*, *Erickson v. Elliot Bay Adjustment Company, Inc.*, 2017 WL 1179435, at *12 (W.D. Wash. Mar. 29, 2017) (denying certification because "Mr. Erickson's proposed class definition contains no applicable time-period; the definition therefore includes prospective class members who would not satisfy the one-year statute of limitation for FDCPA claims.")

complaint that 'state a claim to relief that is plausible on its face' and that satisfy Rule 8(a)(2). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 533, 570 (2007). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.*, *quoting* Fed. R. Civ. P. 8(a)(2). A claim is facially plausible when the plaintiff alleges facts sufficient to show "more than a sheer possibility that a defendant has acted unlawfully" and includes "factual content that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663, 678 (citing *Twombly*, 550 U.S. at 556). This standard requires a plaintiff's pleadings to sufficiently "nudge his claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

When considering a motion to dismiss, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306-07 (2d Cir. 2015). "A complaint need not include 'detailed factual allegations' but it must contain more than mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *JCG v. Ercole*, 2014 WL 1630815, at *5 (S.D.N.Y. Apr. 24, 2014). A complaint containing only "conclusory allegations or legal conclusions masquerading as factual conclusions" will not survive a motion to dismiss. *Womack v. Cap. Stack, LLC*, 2019 WL 4142740, at *3 (S.D.N.Y. Aug. 30, 2019).

**B.      Fed. R. Civ. P. 12(b)(1)**

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). In that regard, "[a] case is properly dismissed for lack of subject matter jurisdiction under 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff asserting subject matter jurisdiction has the burden of proving by a

preponderance of the evidence[8] that it exists. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996); *Aurecchione v. Schoolman Transp. System, Inc*., 426 F.3d 635, 638 (2d Cir. 2005) ("The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."). "Jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Cornwell v. Credit Suisse Group*, 666 F. Supp. 2d 381, 386 (S.D.N.Y. 2009).

## IV.   Argument

### A.   Plaintiff Fails to Adequately Plead Jurisdiction Under CAFA

Plaintiff predicates jurisdiction in the Eastern District of New York based upon existence of CAFA jurisdiction. *See* Plaintiff's Compl., ¶ 5. Specifically, in support of his claim, Plaintiff alleges:

> This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)2). The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of thousands is entitled to up to $1,500 in statutory damages for each class that has violated the FTSA. Further, Plaintiff alleges a Florida class, which will result in at least one Class member from outside Kentucky[9] (sic)."

*See* Plaintiff's Compl., ¶ 3.

Under CAFA, the Court possesses original federal jurisdiction "over any class action involving (1) 100 or more class members; (2) an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (3) minimal diversity." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006). "Under the CAFA, as under the traditional rule, the party

---

[8]   To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. *See Metropolitan, S.A. v. DGM Commodities Corp.*, 2013 WL 5502818, at *2 (E.D.N.Y. Oct. 2, 2013).

[9]   Plaintiff's reference to Kentucky has no application in the underlying matter and likely comes from a prior iteration of a complaint asserted by Plaintiff against another defendant.

asserting subject matter jurisdiction has the burden of proving it by a preponderance of the evidence."); *Henry v. Warner Music Group Corp.*, 2014 WL 1224575, at *2 (S.D.N.Y. Mar. 24, 2014).

In the underlying matter, Plaintiff's conclusory allegations that CAFA is met because the matter in controversy exceeds $5,000,000 in the aggregate and "upon information and belief, there are hundreds, if not thousands[10] of members of the Classes such that joinder of all members is impracticable" is insufficient to carry his burden in this regard. The District Court's decision in *Calta v. Vision Solar FL, LLC*, 2022 WL 17730114, at *5 (M.D. Fla. Dec. 16, 2022) is instructive. In *Calta,* the Court rejected efforts to remove a FTSA claim under CAFA due to the insufficient allegations supporting the removal. In *Calta*, plaintiff asserted a claim under the FTSA, and alleged that "upon information and belief" there were "thousands" of members in the class. Relying upon Plaintiff's allegations, Defendant removed the complaint under CAFA. The Court rejected defendant's efforts to rely upon plaintiff's allegation of information and belief concerning class size to establish jurisdiction. It held that "[w]ithout additional allegations or evidence, the Court is left only to speculate about the number of class members. But such speculation is impermissible." *Id.* at *5.

Similarly in *Mendez v. Global Institute of Stem Cell Therapy and Research, USA*, 2022 WL 3019858, at *2 (S.D. Cal. Jul. 29, 2022), the plaintiff alleged that the cost of her disputed

---

[10]   Not only is Plaintiff's allegation that "hundreds, if not thousands" of members insufficient as a matter of law, but it does nothing to advance his claim for jurisdiction under CAFA. Even assuming an intentional breach resulting in an individual award of $1,500, the existence of hundreds if not thousands of members would not render the controversy in excess of $5,000,000. Simple math shows that for a class of one hundred members, the amount in controversy would only be $150,000, whereas a claim for a thousand members would result in a controversy of $1.5MM. Either way, Plaintiff's uninformed allegations concerning the potential size of the class does nothing to advance his claim for the existence of CAFA jurisdiction.

treatment, $22,500, is representative of the amount charged by defendant for stem cell therapy. Furthermore, plaintiff alleged that "upon information and belief" there are "thousands of patients, dispersed throughout the United States who received treatment from Defendants." *Id.* The Court held that Plaintiff's conclusory allegations that the amount in controversy exceeds $5,000,000 was insufficient, without supporting factual allegations, to establish that the amount in controversy requirements under CAFA has been met.

In the underlying matter, as in *Calta* and *Mendez* Plaintiff conclusorily asserts that the amount in controversy exceeds $5,000,000 because "[o]n information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable." (Plaintiff's Compl., ¶ 25). Plaintiff fails to support his claim for the amount in controversy with any concrete factual allegations. Instead, Plaintiff relies upon supposition and guesswork to establish the size of the class and the concomitant amount in controversy. Plaintiff's conclusory allegations concerning the amount in controversy and size of the class are insufficient to predicate jurisdiction under CAFA, and Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction.[11] *See, e.g.*, *Kim v. Trulia*, 2021 WL 8743946, at *4 (E.D.N.Y. Mar. 31, 2021) (plaintiff's conclusory allegations concerning CAFA fail to demonstrate that the amount in controversy is satisfied); *Starke v. United Parcel Service, Inc.*, 2011 WL 13294965, at *1 (E.D.N.Y. Jan. 13, 2011) ("rote invocations to a jurisdictional statute's amount in controversy

---

[11] Plaintiff may plead minimal diversity "upon information and belief." *See, e.g.*, *Kosieradski v. Eversource Service Energy Company*, 2021 WL 1227571, at *7 (D. Conn Apr. 1, 2021) ("CAFA minimal diversity jurisdiction may be based on a removing party's 'information and belief.'"). However, this does not apply equally to federal jurisdiction generally which cannot be predicated upon "information and belief." *See, e.g.*, *Corle v. Estate Planning and Preservation, Inc.*, 2011 WL 2836374, at *1 (N.D. Ind. Jul. 14, 2011) ("allegations of federal subject matter jurisdiction may not be made on the basis of information and belief, only personal knowledge."); *MCFS & BB, Inc. v. Hartford Insurance Company of the Southeast*, 2021 WL 981600, at *2 (M.D. Fla. Mar. 16, 2021) (collecting cases).

requirement do not, by themselves, constitute a specification of damages sufficient to invoke federal subject matter jurisdiction."); *White v. Impact Funding Corp.*, 2011 WL 836947, at *3 (M.D. Fla. Feb. 15, 2011) ("the number of proposed class members is plead vaguely as 'hundreds' and only 'upon information and belief.' Such vague allegations are not a substitute for establishing jurisdictional facts."); *Penrod v. K&N Engineering, Inc.*, 2019 WL 1958652, at *4 (D. Minn. May 2, 2019) (collecting cases and observing that "[c]ourts have dismissed complaints that do not plausibly allege the jurisdiction amount in controversy under CAFA."); *Sutta v. Hyundai Motor Am.*, 2013 WL 12155722 (C.D. Cal. Jan. 16, 2013) (dismissing CAFA action for lack of subject matter jurisdiction when plaintiff pled "upon information and belief" that the jurisdictional threshold was satisfied.).

**B.      Plaintiff Lacks Standing to Assert Claims under the FTSA**

In order to obtain recovery, Plaintiff must first establish that he has standing to assert claims under FTSA. "Where, as here, there is a question of which state's law applies to party rights, including those that affect standing, federal courts conduct a choice-of-law analysis." *Pacific Life Insurance Company v. Bank of New York Mellon*, 2022 WL 1446552, at *6 (S.D.N.Y. Feb. 22, 2022); *Knapp v. Zoetis*, 2021 WL 1225970, at *16, n. 7 (E.D. Va. Mar. 31, 2021) ("[i]n a diversity action, the choice of law question is a threshold issue, that must be resolved to assess Knapp's standing and the plausibility of Knapp's state law claims.").

"Under New York choice-of-law rules, the first step in any choice of law inquiry is to determine whether there is an 'actual conflict' between the rules of the relevant jurisdictions." *Kinsey v. New York Times Company*, 991. F.3d 171, 176 (2d Cir. 2021). Here, it is undisputed that Federal Circuits in which New York (Second) and Florida (Eleventh) are located view the injury requirement necessary to confer standing in the context of text messages differently. For example, in the Eleventh Circuit, the receipt of a few text messages, without a concrete and particularized

injury, does not confer standing under the FTSA *See, e.g.*, *Frater v. Lend Smart Mortgage, LLC*, 2022 WL 4483753, at *4 (S.D. Fla. Sept. 27, 2022) ("The test to determine whether an injury is concrete is qualitative, not quantitative. The plaintiff's allegations that she received two text messages, or even that she was 'bombarded' with more, do not alone suffice to clear the jurisdictional bar. The fact that Plaintiff cannot identify a single specific harm she allegedly suffered, beyond offering a conclusory recitation of harms like 'annoyance.' 'aggravation,' and 'wasted time' means that she has still failed to clear the qualitative floor for a concrete injury, and therefore, she (and the putative class) lack standing to bring a claim under FTSA."). However, in the Second Circuit, the receipt of a text message, without further injury, may be sufficient to confer standing under the TCPA. *See, e.g.*, *Melito v. Experian Marketing Solutions, Inc.*, 923 F.3d 85, 93 (2d Cir. 2019) ("'nuisance and privacy invasion' of receiving unsolicited text messages is a sufficient injury to allege standing under the TCPA[12].").

Given the conflict, a choice of law analysis is necessary to determine which state's law is applicable to Plaintiff's claims. "A federal court sitting in diversity applies the choice-of-law rules of the forum state." *Kinsey*, 991 F.3d at 176. The New York Court of Appeals has held that "the relevant analytical approach to choice of law in tort actions in New York" is the "interest analysis" *GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 384 (2d Cir. 2006). The New York Court of Appeals has defined "interest analysis" as requiring that "the law of the jurisdiction have the greatest interest in the litigation will be applied and…the only facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." Under this formulation, significant contacts are, almost

---

[12]   The FTSA is the federal analog of the TCPA, and standing is treated the same under the FTSA as it is under the TCPA. *See Frater*, 2022 WL 4483753 at * 2 (treating standing under FTSA, the state analog to the TCPA, as equivalent to that under TCPA) Thus, these cases are comparable.

exclusively, the parties' domicile and the locus of the tort." *Id.* "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Id.*

Applying these factors, Plaintiff is a Florida resident and the subject matter at issue concerns calls received by Plaintiff in Florida and which Plaintiff contends violate Florida law. Accordingly, Florida law should apply to Plaintiff's claims *See, e.g.*, *Weber v. U.S. Sterling Securities, Inc.*, 282 Conn. 722, 737 (2007) (applying New York law in TCPA action because fax at issue was received in New York); *Zelma v. Williams*, 2011 WL 13298530, at *4 (M.D. Fla. Oct. 26, 2011) (in TCPA case finding that Plaintiff's domicile determined applicable law); *cf. Landsman & Funk, P.C. v. Skinder-Strauss Associates*, 2009 WL 2857928, at *3 (D.N.J. Aug. 28, 2009) ("It is clear that courts regularly conduct choice-of-law analysis in addressing TCPA actions"); *Neuer v. Dental Resource Systems, Inc.*, 2015 WL 4634044, at *4 (D. Kan. Jul. 27, 2015) ("Plaintiff's chance of recovery on that claim will not be greatly diminished if it is forced to litigate in another forum because the TCPA is a federal law. But because the alleged tort occurred in Kansas, Kansas courts are in the best position to enforce Kansas tort law.").

Florida law is applicable to Plaintiff's claims. Accordingly, a threshold determination must be made as to whether Plaintiff has standing to assert the claims in the underlying matter.

"To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they have suffered a concrete harm." *Muccio v. Global Motivation, Inc.*, --- F. Supp. 3d ----, 2022 WL 17969922, at *2 (S.D. Fla. Dec. 27, 2022). A plaintiff does not automatically satisfy this requirement "whenever a statute grants the plaintiff a statutory right and purports to authorize the plaintiff to sue to vindicate that right." *Trichell v. Midland Credit Mgmt, Inc.*, 964 F.3d 990, 997 (11th Cir. 2020). In other words, "Article III standing requires a concrete

injury even in the context of a statutory violation" and "bare procedural violations, divorced from any concrete harm" do not suffice." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (U.S. 2016).

In the context of unwanted text messages specifically, the Eleventh Circuit has ruled in *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), a case alleging violations of the TCPA, that the receipt of a single unsolicited text message does not qualify as an injury in fact under Article III. The Court rejected the notion that generalized allegations of wasted time or annoyance caused by isolated text messages amount to a constitutionally cognizable harm, adding: "[s]imply sending one text message to a private cell phone is not closely related to the severe kinds actively intermeddling intrusions that the traditional tort of [intrusion upon seclusion] contemplates." Other recent cases have followed the holding in *Salcedo*, specifically applying its reasoning to claims brought under the FTSA.

For example, in *Frater v. Lend Smart Mortgage, LLC*, 2022 WL 4483753, at *4 (S.D. Fla. Sept. 27, 2022), plaintiff alleged that he received two unsolicited text messages from the defendant in violation of the FTSA, and stated that those messages caused her and the putative class members "harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and wasted time." The Court determined that "[a]s in *Salcedo*, which remains applicable here, those allegations are insufficient to state a concrete injury-in-fact that will support Article III standing." Specifically, the Court stated:

> To be sure, the Plaintiff here also clears the lowest bar that the plaintiff failed to clear in *Salcedo* - Plaintiff Frater pleads facts demonstrating that she received *two* unsolicited text messages, not one, and alleges that her phone was bombarded with more like those two. But the Plaintiff fails to plead any concrete injury-in-fact stemming from those texts. As the Eleventh Circuit has held, "Article III standing is not a 'You must be this tall to ride' measuring stick. The test to determine whether an injury is concrete is qualitative, not quantitative. The Plaintiff's allegations that she received two text messages, or even that she was bombarded with more, do not alone suffice to clear the jurisdictional bar. The fact that the Plaintiff cannot identify a single specific harm she allegedly suffered, beyond offering a conclusory

recitation of harms like "annoyance," "aggravation," and "wasted time" means that she has still failed to clear the qualitative floor for a concrete injury and, therefore, she (and the putative class) lacks standing to bring a claim under FTSA."

*Id.* at *4.

In the underlying matter, Plaintiff alleges that he received three text messages from Defendant in total, and that such messages harmed the Plaintiff in the form of "annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone." *See* Plaintiff's Compl., ¶¶ 16, 19, 21.

Consistent with *Salcedo* and *Frater*, Plaintiff's conclusory allegations stemming from his limited receipt of three text messages are insufficient to establish a concrete injury and thus Plaintiff lacks standing to assert a claim under the FTSA. *See, e.g.*, *Weitz v. Genting New World LLC*, 2023 WL 2328365, at *3 (S.D. Fla. Mar. 2, 2023) (receipt of single text message coupled with bare allegation of statutory violation insufficient to sustain claim under FTSA); *Eldridge v. Pet Supermarket, Inc.*, 446 F. Supp. 3d 1063, 1072 (S.D. Fla. 2020) ("The Eleventh Circuit's rational for finding the plaintiff's alleged loss of privacy and wasted time from receiving a single text message are not qualitatively 'the kind of harm that constitutes an injury in fact' applies equally here, where Plaintiff received only one or two sporadic, short texts per month in a three month period.")[13]; *Muccio*, 2022 WL 17969922 at *3 ("Plaintiff attempts to distinguish his 'injury' by observing that he received five unwanted text messages as opposed to the one unsolicited text message received by the Plaintiff in *Salcedo*. That factual distinction does not change the legal conclusion under Article III on the facts alleged."); *Mittenthal v. Florida Panthers Hockey Club,*

---

[13]  In *Eldridge*, the Court similarly rejected plaintiff's allegations of consumption of phone battery and data plan as sufficient to establish a concrete injury. *Eldridge,* 446 F. Supp. 3d at 1072. Thus, Plaintiff's allegations in this regard (¶ 21) fail to advance his claim for standing in the underlying matter.

*Ltd.*, 472 F. Supp. 3d 1211, 1216 (S.D. Fla. 2020) (plaintiffs' receipt of approximately thirty text messages over a four month period did not provide standing under TCPA where plaintiffs failed to allege any tangible harm); *Perez v. Golden Trust Insurance, Inc.*, 470 F. Supp. 3d 1327, 1329 (S.D. Fla. 2020) ("In total, the two text messages contained fifty words for the plaintiff to read. Like the harm alleged in *Salcedo*, the alleged injury here is 'isolated, momentary and ephemeral.'"); *Fontanez v. Wolverine World Wide, Inc.*, 2022 WL 17959844, at *2 (M.D. Fla. Dec. 27, 2022) ("Even if Fontanez received a handful of text messages, she still lacks a concrete injury [under the FTSA].")[14].

### C.      The FTSA only Applies to Intrastate Communications

Plaintiff alleges that he received text messages without his consent from the Defendant, who is located in New York, and that such messages were placed from New York to Florida. *See* Plaintiff's Compl., ¶¶ 1-2, 4-6. However, the FTSA does not regulate interstate calls. Rather, its application is limited to intrastate calls that are made within Florida to individuals residing there. This holding is bolstered by the legislative history of the statute. When enacted 31 years ago, the Florida Legislature made clear that the FTSA's application was limited to intrastate communications. Specifically, the Florida Legislature explained:

> Provision of the bill attempt to restrict interstate telephone calls involved in soliciting a sale of consumer goods. To the extent this prohibition restricts interstate commerce, it may be too broad in its application, and therefore, constitutionally suspect.

---

[14]   In *Alvarez v. Sunshine Life & Health Advisors, LLC*, 2022 WL 2293449, at *1 (Cir. Ct. Fla. Apr. 11, 2022), the Court determined that plaintiff's allegation that she received a text message without her consent was sufficient to establish an injury under the FTSA. However, the Court was careful to point out that its holding only applied to claims brought in Florida state court insofar as "[t]he court finds that the federal Article III standing requirement does not apply in Florida state Court…Thus, in Florida state court, to bring an action under the FTSA, a plaintiff need only allege that he or she received a text message from the defendant without prior express consent." The Court's decision in *Alvarez* is inapplicable to the underlying matter insofar as the matter is venued in Federal Court which applies Article III standing to Plaintiff's claims.

*See* S.B. 2938, Senate Staff Analysis and Economic Impact Statement § III (Fla. May. 10, 1990). The Legislature proceeded, noting that, in order to avoid constitutional concerns it had identified with applying the FTSA to interstate communications, "limitation of such prohibition to intrastate telephone calls [or text messages] would cure any constitutional deficiency." *Id.* Additional legislative history confirms that the FTSA was intended to apply to purely intrastate communications:

> The Committee on Economic, Professional and Utility Regulation substitute limits the application of the provision to telephone solicitors making calls from a location in Florida to consumers in Florida. The original bill also applied to business from other states making calls to consumers in Florida.

*See* S.B. 2938, Statement of Substantial Changes Contained in Committee Substitute for Senate Bill 2938 (Fla.). Clearly, the application of the FTSA is limited to those intrastate communications for which Plaintiff did not consent. Since the communications at issue in the underlying matter are interstate communications, i.e. those originating with Defendant in New York, the FTSA has no application and Plaintiff's claim in this regard should be dismissed.

### D.   Plaintiff Fails to Plead use of Autodialer

For Count I, Plaintiff asserts a claim under Fla. St. § 501.059(8)(a), which prohibits telephone solicitors from making or causing "a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded messages when a connection is completed to a number called without the prior express written consent of the called party." *See* FL St. § 501.059(8)(a). In the underlying matter, Plaintiff conclusorily asserts use of an automated system. Specifically, Plaintiff states: "[i]n January 2022, Plaintiff Gadke started receiving telephonic solicitation text messages from Defendant Tribeca Group using spoofed phone numbers offering him financial solutions for his business, using

automated systems designed to identify and respond to certain keywords like, STOP." (Plaintiff's Compl., ¶ 15). Plaintiff's pleading in this regard is insufficient to state a claim under the FTSA.

The Court's decision in *Davis v. Coast Dental Services, LLC*, 2022 WL 4217141, at *1 (M.D. Fla. Sept. 13, 2022) is instructive. In *Davis*, plaintiff asserted a claim under the FTSA. In support of his claim, plaintiff alleged that "[t]o transmit the above telephonic sales calls, Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers." *Id.* at *2. The Court held that such an allegation was conclusory. Specifically, the Court held that "Davis could have pleaded such facts as information on Coast Dental's website indicating that messages are sent through automated systems, information regarding the formality of the message, or information regarding the phone number from which the message was received that could indicate an automated source."

Here, as in *Davis*, Plaintiff fails to adequately plead the use of automated systems. Instead, Plaintiff simply parrots the statutory language concerning use of automated systems without further adorning facts explaining how or why Plaintiff knew it was an automated system. Plaintiff's conclusory allegation concerning the use of automated systems is not entitled to any weight, and his claim in this regard should be dismissed as a matter of law. *Cf. Baranski v. NCO Financial Systems, Inc.*, 2014 WL 1155304, at *6 (E.D.N.Y. Mar. 21, 2014)[15] (collecting cases and holding that "the vast majority of courts to have considered the issue have found that 'a bare allegation that defendants used an ATDS is not enough.'").

---

[15] There is a dearth of caselaw interpreting the FTSA. However, "Florida courts often look to federal decisions as a guide to interpreting statute statutes that are similar to federal ones." *Martinolich v. Golden Leaf Mgmt., Inc.*, 786 So. 2d 613, 615 (Fla. Dist. Ct. App. 2001). Accordingly, this Court may look to decisions interpreting the TCPA as a guide insofar as the FTSA is the Florida state law analog to the TCPA.

### E.    Plaintiff Fails to State a Claim that Defendant Violated the DNC

"The TCPA also allows a private right of action for individuals to seek monetary damages for violations of the Do Not Call Registry provision of the TCPA, provided their telephone numbers were registered in the database more than 31 days prior to the violative phone call." *Gulden v. National Security Exchange, LLC*, 2019 WL 13196395, at *2 (D. Ariz. May 23, 2019). In the underlying matter, Plaintiff alleges that he "registered his cell phone number on the National Do Not Call Registry on January 6, 2022." *See* Plaintiff's Compl., ¶ 14. Thereafter, Plaintiff alleges that he received two text messages on January 26, 2022 at 8:53 am and 12:56 pm." *See* Plaintiff's Compl., ¶ 16. As a threshold matter, these calls may not serve as the basis for a violation insofar as Plaintiff's telephone number was not on the National Do Not Call Registry for at least 30 days prior to receipt of the alleged violative texts. *See, e.g.*, *Krakauer v. Dish Network, L.L.C.*, 2015 WL 5227693, at *12, n. 1 (M.D.N.C. Sept. 8, 2015) ("[a] phone number must be registered on the NDNC list for 30 days before a telemarketing call may violate the TCPA."); https://www.fcc.gov/sites/default/files/wireless_phones_and_the_national_do-not-call_list.pdf[16] ("The do-not-call rules require callers that are not exempt from the rules to stop telemarketing calls 30 days after you register a number.").

However, Plaintiff is unable to state a claim in this regard insofar as the telephone number at issue is a business number which cannot be registered on the do not call registry. *See Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 9779, 9785 (June 17, 2008) ("As the Commission has previously stated, the National Do Not Call Registry applies

---

[16]    The Court may take judicial notice of a governmental website without converting the motion into one for summary judgment. *Gerritsen v. Warner Bros. Entertainment, Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) ("Under Rule 201, the Court can take judicial notice of public records and government documents available from reliable sources on the internet, such as website run by governmental agencies.").

to 'residential subscribers' and does not preclude calls to businesses."); Federal Trade Commission, *Federal Trade Commission Consumer Information*, available at https://www.consumer.ftc.gov/articles/0108-national-do-not-call-registry[17] (last visited Jan. 4, 2021) ("Can I register my business phone number or a fax number? The National Do Not Call Registry is only for personal phone numbers. Business-to business calls and faxes are not covered."); Federal Trade Commission, *Q&A for Telemarketers & Sellers About DNC Provisions in TSR*, available at https://ftc.gov/tips-advice/business-center/guidance/qa-telemarketers-sellers-about-dnc-provisions-tsr (last Jan. 4, 2021)[18] ("most phone calls to a business made with the intent to solicit sales from that business are exempt from the Do Not Call Provisions.")

Here, it is undisputed that Plaintiff's full business telephone number is (636) 866-5264 and is registered on www.Google.com and www.Zoominfo.com to the business Spirit FX, which identifies Plaintiff as the owner of the business. *See* Exhs. A and B. The website for Spirit FX similarly identifies Plaintiff as the owner of the Spirit FX. *see* Ex. C, as does his Facebook page, which also identifies (636) 866-5264 as the number on which to reach Spirit FX. *See* Ex. D. Since the telephone number at issue is a business number, it cannot be registered on the National Do Not Call Registry, and Plaintiff's claim in this regard should be dismissed as a matter of law. *See, e.g. Worsham v. Discount Power, Inc.*, 2021 WL 50922, at *4 (D. Md. Jan. 6, 2021) ("because Worsham has held publicly that the subject phone number is a business phone number, he cannot register it with the DNC for purposes of avoiding business-to-business calls."); *Shelton v. Target Advance LLC*, 2019 WL 1641353, at *6 (E.D. Pa. Apr. 16, 2019) (holding that plaintiff did not

---

[17]  *See* FN16; *see also TSA Stores, Inc. v. Department of Agriculture & Consumer Services*, 957 So. 2d 25, 29 (4th DCA 2007) (relying upon federal law in determining whether violation of Florida Do Not Call Registry occurred.") .

[18]  *See* FN16.

suffer an injury in fact and therefore lack standing to sue because he associated the subject phone number with a publicly listed business.); *Chennette v. Porch.com, Inc.*, 2020 WL 9078129, at *6 (D. Idaho Nov. 2, 2020) ("The FCC ruling states that calls to business numbers registered on the DNC will not be considered a violation of the TCPA.").

## V.    Conclusion

Based upon the foregoing, Defendant respectfully requests this Court enter an Order dismissing Plaintiff's Complaint with prejudice, along with such other relief as this Court deems proper.

Dated:  March 30, 2023

<div style="margin-left:40%">

Respectfully submitted,

NEW YORK TRIBECA GROUP


By:   */s/Jeffrey M. Rosin*
      Jeffrey M. Rosin, Esq. #3026952
      O'Hagan Meyer, PLLC
      111 Huntington Avenue, Suite 719
      Boston, MA 02199
      Telephone:    (617) 843-6800
      Facsimile:   (617) 843-6810
      jrosin@ohaganmeyer.com

</div>

**<u>CERTIFICATE OF SERVICE</u>**

I, Jeffrey M. Rosin, hereby certify that on this 30th day of March, 2023, I caused the foregoing *Memorandum of Law in Support of Motion to Dismiss Complaint* will be served upon registered counsel by email.

/s/ *Jeffrey M. Rosin*
Jeffrey M. Rosin

# EXHIBIT A



# Google

(636) 866-5264

Maps | News | Images | Videos | Books | Flights | Finance

Tools   SafeSearch on

About 16,700 results (0.42 seconds)

**Cheer Theory**
https://cheertheory.com › Businesses

## Spirit FX
636-866-5264. info@spiritfx.com. Facebook · Instagram. Category. Choreographers and Consultants. Cheer Theory. An all-star cheerleading website.

**Twitter**
https://twitter.com › TeamSpiritFX › status

## Spirit FX
10% off Spirit FX Choreography 25% OFF Stunt Technique Camps Call us at **(636) 866-5264** or email at INFO@SPIRITFX.COM to book your package TODAY!

**ZoomInfo**
https://www.zoominfo.com › spirit-fx

## Spirit FX - Overview, News & Competitors
Spirit FX's phone number is **(636) 866-5264** What is Spirit FX's official website? Spirit FX's official website is www.spiritfx What is Spirit FX's Revenue?

**MapQuest**
https://www.mapquest.com › United States › Missouri

## Spirit FX, 1511 Locust St, St Louis, MO, Services NEC
Spirit FX. 1511 Locust St St Louis MO 63103. **(636) 866-5264**. Claim this business · **(636) 866-5264**. More. Directions. Advertisement ...

**Whitepages**
https://www.whitepages.com › phone › 1-636-866-5264

## 636-866-5264 | Mobile phone - Miami Beach, FL
Did you get a call or text from **636-866-5264**? View owner's full name, address, public records, and background check for 6368665264 with Whitepages reverse ...

**Fierce Board**
https://fierceboard.com › ... › Cheer Market!

## Spirit Fx - Skills And Choreography Instructors Needed
CONTACT:For any questions, please contact Kyle Gadke below and make sure you check out our Facebook page! Phone: **(636) 866-5264**. Email: kyle.gadke@gmail.com

**FamilyTreeNow**
https://www.familytreenow.com › gsetlkokekkpatennaaup

## Kyle Nicholas Gadke - Miami Beach, Florida - (636) 866-5264
Get Info on Kyle Nicholas Gadke - Miami Beach, Florida - **(636) 866-5264**. We're 100% free for everything!'

## Images for (636) 866-5264

>

▶ Vi

Feedback

View all →

Phone Number Expert
https://www.phonenumberexpert.com › phone-number    ⋮

### (202) 866-5264 - Local Phone Number for Sale

(202) **866-5264** is a Local vanity phone number in District Of Columbia available for sale. These numbers are compatible with all carriers and offer the ...

Oklahoma.gov
https://www.sai.ok.gov › database [PDF]    ⋮

### Jenks Aquarium Authority

May 27, 2016 — 32 **866 5264**. INTEREST ... **636**. PROVIDING FOR THE. 2016-2018 BIENNIAL BUDGET. WHEREAS, it is necessary to provide publicservices to the ...
267 pages

More results ∨

# EXHIBIT B

Case 1:22-cv-07810-FB-JAM   Document 15   Filed 05/04/23   Page 34 of 54 PageID #: 96



Free
Tools

Solutions ⌄

Pricing

Our
Data

Top
by
Industry

Top
Profiles ⌄

Sig



Overview     Competitors     Org Chart

Search for a contact or company 🔍

Search for a contact or company 🔍



# Spirit FX

Broadcasting · Illinois, United States · <25 Employees

Our team has a proven track record of success, crafting innovative visual experiences for film, television, advertising, video game and interactive projects. Masters in the fields of design, animation, compositing, and production management, Spirit VFX's reputation...

**Read More**

Contact

## Who is Spirit FX

📍 **Headquarters**     2944 N Halsted St Ste 302, Chicago, Illinois, 60657, United States

📞 **Phone Number**     (636) 866-5264

🌐 **Website**     www.spiritfx.com

💲 **Revenue**     <$5M

📈 **Industry**

( Broadcasting )   ( Media & Internet )

**Spirit FX's Social Media**   

✓ Is this data correct?     👤 View contact profiles from Spirit FX

**Popular Searches**

Spirit FX     Spirit Fx LLC     Spirit VFX     Spirit VFX Studio Pvt Ltd

SIC Code 78,781     NAICS Code 51,512     Show More

## Top Competitors of Spirit FX
### Leads

Case 1:22-cv-07810-FB-JAM Document 15 Filed 05/04/23 Page 35 of 54 PageID #: 97



Sound

👤 <25   💲 <$5M

👤 <25   💲 <$5M

👤 <25   💲 <$5M

Stockmusic

Beatstreet NYC

Auralation LLC

👤 <25   💲 <$5M

👤 <25   💲 <$5M

👤 <25   💲 <$5M

## Compare to Competition

[ See Comparison ]

## Spirit FX Org Chart



**Rohit Parulekar**
Project Manager
Phone    Email

See Full Org Chart

Leads

Case 1:22-cv-07810-FB-JAM   Document 15   Filed 05/04/23   Page 36 of 54 PageID #: 98



Free
Tools | Top
Profiles ⌄ | Solutions ⌄ | Pricing | Our
Data | Sig

by
Industry

Overview    Competitors    Org Chart

# Frequently Asked Questions regarding Spirit FX

Where is Spirit FX located?                                                                    ◯

Spirit FX's headquarters are located at 2944 N Halsted St Ste 302, Chicago, Illinois, 60657, United States

What is Spirit FX's phone number?                                                              ◯

What is Spirit FX's official website?                                                          ◯

What is Spirit FX's Revenue?                                                                    ◯

What is Spirit FX's SIC code?                                                                   ◯

What is Spirit FX's NAICS code?                                                                 ◯

How many employees does Spirit FX have?                                                        ◯

What industry does Spirit FX belong to?                                                         ◯

What is Spirit FX competition?                                                                  ◯

How do I contact Spirit FX?                                                                     ◯

What does Spirit FX do?                                                                         ◯

What are Spirit FX social media links?                                                         ◯

Is Spirit FX a public company?                                                                 ◯

Leads

3/29/23, 8:03 AM
Spirit FX - Overview, News & Competitors | ZoomInfo.com



Free
Tools

by
Industry

Top
Profiles

Solutions ⌄

Pricing

Our
Data

Sig

Overview          Competitors          Org Chart

# View Employees



**Kyle Nicholas**
Owner
📞 Phone    ✉ Email

**Kyle Gadke**
Owner
📞 Phone    ✉ Email

**Gopinath Vikram**
Mid Roto Artist
📞 Phone    ✉ Email

**Kayla Sprague**
Choreographer
📞 Phone    ✉ Email

**Patrick Smith**
📞 Phone    ✉ Email

**Akhil Sankar**
Mid Level Roto Artist
📞 Phone    ✉ Email

**Jose Francis**
Roto Artist
📞 Phone    ✉ Email

**Rohit Parulekar**
Project Manager
📞 Phone    ✉ Email

Find more contacts

# Trending Intent Signals ⓘ

Find out what **Spirit FX** is actively searching across the web.

**Leads**





# Test Drive ZoomInfo's Directories

Browse Directories

PEOPLE SEARCH

Boston   New York City   Houston   Chicago   Los Angeles   Atlanta

A B C D E F G H I J K L M N O P Q R S T U V W X Y Z

COMPANY SEARCH

Boston   New York City   Houston   Chicago   Los Angeles   Atlanta

**POPULAR FEATURES**

Sales Solutions

Marketing Solutions

Company Contact Search

Buyer Intent Data

CRM Lead Enrichment

**COMPANY**

About Us

Our Leadership

Investor Relations

FAQs

Careers

Contact Us

**B2B DATABASE**

Our Data

Data Transparency

Code of Community

Verify Company Data

Verify Profile Data

Browse Directories

People Search

Company Search

**MORE RESOURCES**

ZoomInfo Videos

Newsroom

Engineering Blog

Recipes for Success

Privacy Center

Free Trial

Login

866.904.9666

**Leads**

Case 1:22-cv-07810-FB-JAM    Document 19-1   Filed 03/01/23   Page 40 of 54 PageID #: 102

**zoominfo**

# EXHIBIT C

 (https://spiritfx.com)



# Kyle Nicholas

# Owner, Platinum Choreographer

Miami, FL

**Kyle** is the Owner of Spirit FX, Spirit FX Championships and Co-Owner of Spirit FX Canada. His choreography has led teams to numerous top finishes at USASF Worlds, and Champions crowned at The Summit, D2 Summit, NCA College Nationals and numerous major events across the country such as NCA Dallas and CHEERSPORT. In 2014, Kyle was named one of the industry's "Top 35, Under 35" and was runner-up, for the USASF Choreographer of the Year Award! Kyle is currently USASF Credentialed and Green Lighted through the USASF background check as well as SafeSport Certified.

**Kyle** has been in the cheerleading industry for almost 20 years in numerous roles; coach, program director, panel judge, head judge, accuscore judge and apparel sales; just to name a few. Kyle hung up his coaching shoes in 2016 to focus on the growth of Spirit FX and mastering his choreography craft. Kyle introduced Spirit FX Canada in 2019 and Spirit FX Championships in 2020. He has done International work and speaks at many conferences around the World including Chile, Canada, Colombia and Puerto Rico. The culture Kyle created at Spirit FX is not only creating innovative and award winning routines; but that customer service is unmatched and just as important.

**Kyle** is a firm believer in "smart choreography" which is making strategic decisions while putting a routine together to what will best suit the team that season. Picking and choosing "wow moments" can be crucial to a teams success as well as quickly analyzing and executing what a team or programs strengths and weaknesses are. If Kyle had to define his choreography style, it would be described as consistent floor use, innovative stunt and pyramid transitions that push gray areas while using the floor with smooth has butter transitions and being a scoresheet guru. Kyle believes in the old school theory "clean wins" and that can be seen through the routines he puts together. They are easy to read which means they are easy to judge. He believes playing the scoresheet can be manipulated in the pure science behind routine composition.



Spirit FX is the leader in skills and technique camps and choreography in the cheerleading industry!

Spirit FX provides the best choreography and camps with inclusive pricing. Our trained staff offers multiple choreography packages, skills and technique camps, and clean up camps to help you max out your scoresheets!

Spirit FX is also known for superb, season-long customer service!

Our commitment, is that at Spirit FX, not only are you receiving a high caliber innovative choreographer, but you're receiving a top notch professional experience from start to finish.

Our belief, is that choreography is about a positive experience for athletes and coaches, paired with tangible results on the competition floor. Those results are driven by innovation, experience, and top of the line follow through and year-round consultation.

## Explore

Services(https://www.spiritfx.com/services/)

Staff(https://www.spiritfx.com/#staff-sec)

Forms(https://www.spiritfx.com/forms/)

Samples(https://www.spiritfx.com/samples/)

About Us(https://www.spiritfx.com/about-us/)

## Subscribe Our Newsletter

Email

Submit

(https://www.facebook.com/SpiritFX)(https://www.instagram.com/spiritfx/)(https://www.youtube.com/SpiritFXVideos/)

© Copyright 2022-2023 Spirit FX

Privacy Policy(https://spiritfx.com/privacy-policy/)

Case 1:22-cv-07810-FB-JAM   Document 15-1   Filed 05/05/23   Page 45 of 54 PageID #: 107

Terms & conditions(https://spiritfx.com/terms-conditions/)

Powered by Designocracy
(https://thedesignocracy.com/)

# EXHIBIT D








# Spirit FX

6.5K likes • 7K followers

 Call Now     Message    👍 Like

Posts    About    Mentions    Reviews    Followers    Photos    More ▼                    •••

## Intro

Spirit FX provides Customized Cheerleading Skills Camp and Choreography designed to Max Out Scoreshe

ⓘ  **Page** · Sports

📞  (636) 866-5264

✉️  info@spiritfx.com

🌐  spiritfx.com

⭐  Rating · 5.0 (87 Reviews)





5 20+

## Photos

See all photos

Privacy · Terms · Advertising · Ad Choices · Cookies · More · Meta © 2023

## Posts

Filters

**Spirit FX**
March 27 at 10:00 AM ·

Wishing Sam a very happy birthday! #TeamSam #TeamSpiritFX



   





**Spirit FX**
3d · 🌐

#TeamMatt had a great time working with Revo from @revoltcheerandtumble ! #RoutineCleanUp #TeamSpiritFX #SpiritFX #ChoreographyYouCanTrust

 



# Kyle Nicholas

Message

Posts   About   Friends   Photos   Videos   Check-ins   More ▾   •••

## Intro

Owner at **Spirit FX**

Studied Business Administration/Management at Lindenwood University

Went to North Cedar High School

Lives in **Miami Beach, Florida**

From **Tipton, Iowa**

Single

Pronounces name KYL NIH-kuh-les

Joined September 2005

             

 ky.nicholas

 kgadke1

 kyle.gadke

+ 8

**Featured**

**Photos**                                                                    See all photos



    



**Friends**                                                                                                    See all friends

**Life events**                                                                                                   See all



  

 5  20+

Privacy · Terms · Advertising · Ad Choices ▢ · Cookies · More · Meta © 2023

## Posts

Filters

 **Kyle Nicholas**
18h · 🌐

Whoever needs to hear this today; Don't chase. Be chased. You're the tequila. Not the lime.

 103

16 comments  3 shares

 Like                     Share

View more comments

 **Carrie Belcher Nichols**
Yes!!

**Like**    8h



Case 1:22-cv-07810-FB-JAM   Document 15-2   Filed 03/04/23   Page 54 of 54 PageID #: 116








